## SCARBOROUGH v. REYNOLDS.

1. The agency of a party must first be proved by other evidence than his acts, before it can be assumed that his acts are binding on the principal.

2. A special authority conferred upon an agent, in the management of a plantation, and the interests connected with it, to demand and sue for all monies, &c., " subjecting myself to be sued through him, in the same manner as if I was personally present," does not give the agent power to execute a note in the name of the principal.

3. Such a power does not authorize a submission of matters in dispute to arbitration, at least until after suit brought.

4. An authority to an agent, stated thus, " if you can honorably and fairly settle with Reynolds for me, out of court, do so, if not, let the court and jury settle," does not authorize a reference to arbitrators ; nor will authority to exercise a reasonable discretion, or to submit to a reasonable sacrifice, confer such power.

5. Where a witness states, that according to his best recollection, written evidence of an award exists, it is sufficient in the absence of opposing proof, to exclude parol testimony of the award.

6. A witness cannot be allowed to state, that he saw a credit of $400 entered upon a note, without producing the note, unless, perhaps, the note has been fully paid off, so as to warrant the inference that it has been destroyed, or unless he could swear to the payment from his own knowlege.

Writ of Error to the Circuit Court of Macon.

THE defendant in error declared against the plaintiff, in *assumpsit*, on a promissory note, dated the 12th October, 1844, and payable one day after date, for the sum of $516 39. The cause was tried on issues to the following pleas, viz :— 1. *Non-assumpsit*. 2. That James Allen, who purports upon the face of the note to have made the same, as the defendant's agent, acted without the defendant's knowledge, authority or consent. 3. The plaintiff is indebted to defendant in a sum which exceeds the amount of the note, and for the excess the defendant prays judgment against the plaintiff according to the statute. Upon the trial, the defendant excepted to the ruling of the court. To sustain the

authority of Allen to make the note declared on, the plaintiff adduced a letter of attorney, made by the defendant, on the 7th February, 1844, which recited that the latter, who was a citizen of Montgomery county, in the State of North Carolina, was the proprietor of a plantation, slaves, and stock, in the county of Macon, Alabama, to which it was inconvenient for him to attend in person; and confiding in the integrity of James Allen, of Russell county, Alabama, he had appointed him his sole agent, with authority to do and transact in the name of the principal, " all business necessary for a judicious management of all my plantation interest in the county of Macon, and State of Alabama aforesaid, hereby authorizing him to contract in my name for such working tools, work horses, or other stock, or provisions, as may be required on said plantation, to sell and dispose of such surplus provisions and stock as the said Allen should think may be dispensed with, to employ and discharge such under agent or overseer as he may choose, never more than one at a time; to sue, ask for and demand all sums or monies due me, or which may become due in the hands of Newman Reynolds, and all other persons whatsoever, all forfeitures, and damages or penalties to me in anywise belonging or accruing, subjecting myself to be sued through him, in the same manner as if I was personally present, and I do hereby bind myself, my heirs and assigns to stand to and abide by all the transactions of the said Allen," &c.

Plaintiff next read extracts from some four or five letters, written by the defendant to his agent; the first of which is dated in February, 1844, and the last in August of the same year, from which we condense the following : " Inclosed you will find a power of attorney, written after the form you sent me, duly authenticated, also Newman Reynolds' receipt, accompanied by a kind of scrawl account, from which I am in hopes you can get a tolerably correct outline of the situation in which I left my business with Mr. Reynolds."

Again : " You observe in your letter that Reynolds thinks to be ready for a settlement by the spring. He wrote last summer that all the money was collected, then why not be ready before spring ?" " If you can possibly, honorably and fairly settle with Reynolds for me, out of court, do so, if not,

let the court and jury settle." On 30th April, 1844, he writes thus, " I would suggest (with deference, however,) that may-be it would be prudent, whenever you and him attempt to settle, let it be in the presence of some few gentlemen of undoubted veracity." *Again,* on the 16th May following he says, " In my letter of the 30th April last, I advised you how to settle with Mr. Reynolds, still should you think it undoubted the best to settle with him in some other way, I have no objection to your exercising a prudent discretion in the matter. I have every reason to believe he intends to wrong me." *Further,* " Please do the best you can with the matter—write to me as soon as this comes to hand— give me all the information you can." *Lastly :* " As I always have said to you, I still say, settle with him if you possibly can, by exercising a prudent discretion, even at a reasonable sacrifice on my part ; if not, be certain to bring him into court at your next term."

It was proved by Allen, the agent, that the plaintiff resided in Russell county, Alabama ; that witness had been the agent of the defendant in this State for three years prior to the year 1844, and had never seen defendant in this State during the period of his agency. Thereupon the defendant moved to exclude the note from the jury, but his motion was overruled.

On the part of the plaintiff it was further shown, that the greater part of the consideration of the note was a disputed *item* in a running cash account between himself and the defendant ; and for the purpose of concluding the defendant from all inquiry into the correctness of that item, proved that it had been made the subject matter of arbitration by an agreement between the plaintiff and Allen, acting as the defendant's agent, under the authority conferred by the power of attorney, and extracts of letters above stated, and the arbitrators had decided the dispute in favor of the plaintiff. The admissibility of this evidence was objected to, on the ground that Allen was not authorized to submit the matter to arbitration, but the objection was overruled, and the testimony permitted to go to the jury.

The defendant then introduced a witness, who testified that himself and some three or four others were the referees

in the arbitration, and though not positively certain of the fact, yet according to his best recollection, the award was reduced to writing; but if written, he did not remember to whom it was delivered. Thereupon the defendant moved the court to exclude all the testimony in respect to the award, but his motion was overruled.

It was further proved, that the plaintiff, while acting as the defendant's agent, received a large amount of money belonging to his principal. Thereupon the plaintiff proved the disbursement of certain sums of the money so received by him; and for the purpose of showing that he had paid out an additional sum of four hundred dollars for the benefit of the defendant, proved by the agent, Allen, that on a partial settlement between plaintiff and witness, the plaintiff insisted that he had paid four hundred dollars on a note given by the defendant to one Flewellen, on which the plaintiff was the surety, and said that a credit therefor was indorsed on the note. Plaintiff then executed a conditional obligation to witness, as the defendant's agent, that if such credit was not on the note, he would pay that amount; which obligation was given up by Allen to the plaintiff before suit was brought. The note to Flewellen was not produced, and the plaintiff, in continuation of his proof on this point, introduced one McRae, who testified that he was defendant's agent subsequently to Allen, and in that character paid money to Flewellen, and at that time he saw a credit on the note for $400, in Flewellen's hand-writing. The defendant objected to this evidence because the note was not produced, but the objection was overruled, and the testimony permitted to go to the jury. To the several rulings of the court adverse to the defendant, he excepted. A verdict was returned for the plaintiff, and judgment rendered accordingly.

R. Dougherty and N. W. Cocke, for the plaintiff in error, made the following points: 1. A person dealing with one who professes to act in the character of an agent, is bound to know the extent of his authority. [Fisher & Johnson v. Campbell, 9 Porter, 210; Story on Ag. 85, § 72.] 2. Neither the power of attorney nor letters from Scarborough to Allen, authorized the latter to execute the note. [Wood v.

McCain, 7 Ala. 800 ; Rossiter v. Rossiter, 8 Wend. 494 ; Story on Agency, § 62 to 66, inclusive.] And it was the duty of the court to have determined the effect of these writings. [Earbee v. Craig, 1 Ala. R. 607.]

3. The power of attorney and letters did not, either separately or collectively, confer on Allen the authority to submit any matter connected with the business of his principal to arbitration. A suit at law, on the failure of the agent himself to effect a settlement, is expressly enjoined. The submission to arbitration was nothing more nor less than a delegation of the agent's authority—to authorize this, the power should have been expressly conferred. [Story on Ag. 14, § 13.]

4. The evidence was *prima facie* sufficient to show that the award was reduced to writing ; and in the absence of all counter proof, or an attempt to account for its non-production, the parol testimony should have been excluded. [3 Phil Ev. C. & H's Notes, 1210 ; Broone v. Dykes, 3 Monroe Rep. 529 ; Mather v. Goddard, 7 Conn. Rep. 304 ; Clark v. Longworth, 1 Wright's R. 189 ; McKee v. Reif, 4 Yeates' Rep. 340.]

5. To have authorized the admission of evidence of the payment to Flewellen, the note should have been produced, or its absence accounted for.

J. E. Belser, for the defendant in error, insisted, that the authority of the agent, Allen, was general and unlimited in respect to the management of defendant's business of planting in Macon county, or the mode of settling his accounts with the plaintiff. [21 Wend. Rep. 279 ; 13 Mass. R. 178 ; 1 Pick. Rep. 215 ; 22 Id. 85 ; 6 Cow. Rep. 354 ; 1 Wash. Rep. 454.] Upon the facts disclosed, the assent of the defendant to the manner in which his agent had exercised his authority may be presumed. [14 Serg. & R. Rep. 27 ; 3 Cow. Rep. 281 ; 7 Id. 739.]

The agent had the power to submit to arbitration, and the note is but the award of the arbitrators, and in legal effect the act of the defendant. This is shown by the power of attorney and letters. The note was nothing more than the

consummation of a settlement regularly made, and is binding on the defendant.

COLLIER, C. J.—1. It is not necessary to advert to the well settled distinction between a general and special agency, as to the obligation of third persons who may deal with an agent, to know the extent of his powers, and how and to what extent they have been limited. [Gaines v. McKinley, 1 Ala. Rep. N. S. 446; Webster v. Seekamp, 4 B. & A. Rep. 352; Fenn v. Harrison, 3 T. Rep. 760; Whitebread v. Tuckett, 15 East's Rep. 407; Gibson v. Colt, 7 Johns. Rep. 390; Wood v. McCain, 7 Ala. Rep. 800; Munn v. Commission Co. 15 Johns. Rep. 44; Parks v. Turnpike, 4 J. J. Marsh. Rep. 456; Huntington v. Wilder, 6 Verm. Rep. 334; Hayden v. Middlesex Turnpike, 10 Mass. Rep. 397; 2 Kent's Com. 618, 620; Stackpole v. Arnold, 11 Mass. Rep. 29.] In the case before us, there is no evidence that the authority indicated by the writing adduced, was in any manner limited. The first question then, which arises, is, did these confer the power on the defendant's agent to make the note declared on? In making the note, the fact of agency is assumed, and it was incumbent upon the plaintiff to know the extent and nature of the authority under which Allen acted, and the defendant cannot be charged beyond what it expressly, or by implication imports. [Story on Ag. § 72.]

Powers of attorney, it is said, are ordinarily subjected to a strict construction, and the authority is never extended beyond that, which is given in terms, or is necessary and proper for carrying the authority so given into full effect. Consequently, it has been held, that a power to sell, assign and transfer stock, will not include a power to pledge it for the agent's own debt. Nor will a power to bargain and sell land, include authority to grant a license to the purchaser previous to a conveyance, to enter and cut timber upon the land, though done *bona fide*, with a view to effect the sale. [Story on Ag. § 68 to 71, and citations in the notes.]

General language, when used in connection with a particular subject matter, will be presumed to be used in subordination to that matter, and construed and limited accordingly.

33

Under the influence of this rule, it has been decided, that an authority to demand and receive all money that might become due to the principal on any account whatsoever, to "transact all business," and on payment to give proper receipts and discharges, and in the event of non-payment, to use all lawful means for the recovery, did not authorize the agent to indorse a bill received under the letter of attorney, in the name of the principal, and procure a discount thereof, the words "all business," must be construed to be limited to all business necessary for the receipt of the money.  So a general letter of attorney to receive from the commissioners of the navy, &c., all salary, wages, &c., and all other money due to the principal, with a general power to receive all demands from all other persons, to appoint substitutes, and to make due acquittances and discharges, has been held not to authorize the agent to negotiate any bills received in payment, or to indorse them in his own name, although there was evidence of a usage among agents of the like sort, to negotiate such bills; for the authority conferred, did not include any any such power of negotiation; and parol evidence is not admissible to control or enlarge the language of a written instrument.  It has been also held, that a power of attorney to receive, demand and sue for, all sums of money then due, or thereafter to become due to the principal, in certain countries, and to discharge and compound the same, to execute deeds of land, then or thereafter owned by the principal, in a particular State; and to accomplish at his discretion a complete adjustment of all the concerns of the principal in the State of New York, and to do any and every act in his name which he could do in person, does not authorize the agent to give a promissory note in the name of the principal, upon the ground, that making an adjustment of his concerns, did not include any incidental authority to give the note; for the authority, notwithstanding the general words, was to be construed to be limited to the business referred to in the preceding clauses, and not to include a general authority to adjust all the other concerns of the principal.  Story on Ag. § 62 to 68, and citations in notes.  See also, Wallace v. The Branch Bank at Mobile, 1 Ala. Rep. N. S. 565; Wood v. McCain, 7 Id. 800; Emerson v. The Providence Man. Co. 12 Mass. R.

237; White v. Westport Man. Co. 1 Pick. Rep. 215; Brew-
ster v. Hobart, 15 Id. 302; Atwood v. Mannings, 1 Mann. &
Ryl. Rep. 66.] We might add to these citations many oth-
ers to the same effect, but this is deemed unnecessary, as the
most of them will be found referred to in the two cases cited
from our own reports. See however, Paley on Ag. 189, *et
seq.* and citations in notes.

The special authority conferred upon Allen related to the
plantation of the principal, and the interests connected with
it, and authorized him to demand and sue for all monies that
might be due to the principal from the plaintiff, and from all
persons whatsoever, subjecting the principal to suit through
the agent. The general terms employed, and the declara-
tion that the principal would abide by all the transactions of
the agent, must be construed in reference to the object of the
power, the purpose intended, and the special authority grant-
ed. Thus limited, as we have seen the rule of construction
requires, it is perfectly clear, the letter of attorney does
not impart the power to execute a note in the name of the
principal.

What has been said in respect to the power of attorney, is
pertinent to the extracts from the defendants letters. These
merely authorized the agent to settle with the plaintiff, with
or without a suit, or in such manner, even at a reasonable
sacrifice, as he should think proper—observing a prudent dis-
cretion. This, in effect, was nothing more than an authori-
to to adjust the accounts between the parties, and to receive
of the plaintiff what might be due to the defendant. The
authorities cited, very satisfactorily establish, that although
the balance might be in favor of the plaintiff, the agent could
not, in virtue of the power to settle, make a note for its pay-
ment, in the name of the principal.

The agency of a party must first be proved from other ev-
idence than his acts, before it can be assumed that his acts
are binding on the principal. [Scott v. Crane, 1 Conn. Rep.
255; Harrison v. Jackson, 7 T. Rep. 209; Rex v. Brigg, 3
P. Wms. Rep. 432; Porthouse v. Parker, 1 Camp. Rep. 82;
Emerson v. Prov. Man. Co., *supra.*] We have seen that the
evidence of the agent's authority to bind the defendant,
was altogether insufficient, and whether admissible or not,

the court should thus have charged the jury, as to its legal effect.

2. Watson, in his treatise on the Law of Arbitration and Award, (p. 49, *et seq.*) says—"An attorney, in an action at law, has a general power to refer, and by entering into a reference will bind his client; and the courts of law have gone so far in holding a party in a cause bound by the reference of his attorney, that he is even bound by a reference of the action entered into by his attorney, when he has expressly desired his attorney not to refer. So an agent duly authorized, may bind his principal in a submission to arbitration, but the agent must be duly authorized; but in exercising the power given to him by his principal, the agent should make the submission in the name of his principal, otherwise the agent will be bound and not the principal." In Billing's Law of Awards, (p. 53,) it is said, "The power of the attorney seems to be confined to the referring the cause (at the trial) at *nisi prius* only, on the principle, it is presumed, that it is the attorney whom the court recognizes in governing the proceedings, and that the client is bound by the act of the attorney. In any other stage of the proceeding, the attorney would be the mere agent of the principal, and all things which would be deemed necessary to give an agent authority, would be required to authorize an attorney to refer." Both of these authors admit, that it has been decided that a solicitor in chancery has not the same power to refer as an attorney has at law, and intimate that the distinction is well founded. [Inhab. of Buckland v. Inhab. of Conway, 16 Mass. 396.]

We have made these quotations, that it may be seen under what circumstances an attorney at law may assent to the reference of a suit in which his client is a party, and that neither himself nor an agent can submit a controversy of the party represented by them, unless they have an authority, express or implied. The attorney at law, even though employed by an agent, it is said, represents the principal, and if he enters into a reference at the trial in the primary court, without fraud, an award in other respects unobjectionable, made in obedience thereto, will be sustained. These legal conclusions, however, rest upon reasoning peculiar to such a state of case, and cannot, in the nature of things, have any ap-

plication to an agent. [Billings on Awards, p. 54.] It follows from what has been said, that an attorney at law, retained to collect a debt, or to institute a suit, cannot, before the action is instituted, submit the matter to arbitration; and to authorize an agent to exercise such a power, it must be expressly conferred or embraced within the authority explicitly granted. The question then, upon this branch of the case is this, did the power of attorney, or letters, directly or incidentally authorize the agent to refer the matters in controversy between the plaintiff and defendant to the arbitrament of third persons?

The letter of attorney authorized Allen "to sue, ask for and demand all sums or moneys due me (defendant), or which may become due, in the hands of Newman Reynolds, and all other persons whatsoever;" and subjected the principal to suit through his agent, as if he was personally present. The first branch of the authority conferred, had reference to the collection of debts which might be due to the principal from all persons, but from the plaintiff in particular. This contemplated the defendant as a creditor, and the agent as an actor, in obtaining payment, either by demanding it in person, or by legal coercion; but does not authorize him to take any step by which his principal may be made a debtor. The second branch must either be construed literally, that is, to be subject to the service of process, &c. when a suit is instituted in usual form, or else to be suable as the substitute of his principal in respect to all matters which concern or grow out of his agency. In this view, it is clear that the letter of attorney does not confer the power to submit, at least until after a suit is brought.

From the two first extracts from the defendant's letters, there can be no pretence of authority to submit to arbitration. In the third, he says, if "you" can honorably and fairly settle with Reynolds for me out of court, do so, if not, let the court and jury settle. This instruction contemplates a settlement by the personal agency of Allen, and not by a substitute or the arbitrament of persons selected by him and the plaintiff. One who has a bare power or authority from another to do an act, must execute it himself, and cannot delegate it to another, unless such an authority is given him

by express terms. The power of substitution may however be implied, where it is indispensable by the laws in order to accomplish the end; or it is the ordinary custom of trade; or it is understood by the parties to be the mode in which the particular business would or might be done. Mr. Justice Story, in his treatise on agency, thus briefly sums up the law on this point, as deduced from the decisions, viz: "The authority is exclusively personal, unless from the express language used, or from the fair presumptions growing out of the particular transaction, or of the usage of trade, a broader power was intended to be conferred on the agent." § 13, 14, 15. If the submission to referees be the delegation of the authority which was deputed to the agent, the general rule we think should be applied, and there is nothing in the present case to bring it within the influence of either of the exceptions.

We have seen that an authority to settle an account, or all accounts, without restriction as to the mode of settlement, does not permit the agent to bind his principal by note. Is not a submission to arbitration, and an award consequent upon it, more conclusive of the rights of the principal, than making a note? It certainly is, and if, upon authority, the latter is not allowable, we think upon principle, the former cannot be tolerated. Hence we conclude, that the power we are considering does not embrace an authority to submit to arbitration.

The letter of the 30th April confers no power, but merely suggests as a prudential measure, whether it would not be better for the agent, whenever he attempted to settle, to do so in the presence of some gentlemen of truth. The letter of the 16th May, merely refers to the advice contained in the preceding, and says that the writer had no objection, if his agent thought it best to settle in some other way—he believed that the plaintiff intended "to wrong" him, and was willing that the agent should exercise a prudent discretion. In the last letter, the defendant repeats what he says he had always said, viz: settle with the plaintiff if you can by exercising a prudent discretion, even at a reasonable sacrifice. If no settlement can be effected, he directs suit to be brought. The letter of May expressed a willingness that

Scarborough v. Reynolds.

the agent should disregard the suggestion contained in the letter of April, and both that and the one subsequently written authorize him to exercise a prudent discretion, and the latter even authorizes him to submit to a reasonable loss. Every agent with power to settle accounts generally, is invested with reasonable discretion, and the only additional authority is that, which allows him to submit to a reasonable sacrifice. It results, from what has been said, that the several letters last considered, will not support the submission to referees, and that the alternative of the agent, if he could not effect a settlement by the exercise of his own personal efforts, was to institute a suit.

3. Where a writing exists, it is generally the exclusive medium of proving the transaction to which it relates. [3 Phil. Ev. C. & H's Notes, 1208, *et seq.*] It is incumbent upon the party who objects to the admission of parol proof because there is written evidence of the same fact, to show that there is such a writing. In the case at bar, one of the arbitrators stated that according to his best recollection, their award (which evidenced the making of the note declared on) was written out. This was equivalent to the expression of a confident belief of the fact; and although the witness could not positively affirm it, yet according to all analogy, it was quite sufficient in the absence of opposing proof to exclude parol testimony, if it had been otherwise unobjectionable.

4. If the witness could have testified from his own knowledge to the payment of the $400 on the note of the defendant to Flewellen, or if perhaps it appeared that the note had been fully paid off, so as to warrant the presumption of its destruction, then the parol evidence of the credit indorsed would have been admissible. [The P. & M. Bank of Mobile v. Willis & Co. 5 Ala. Rep. 783.] But in the absence of such additional proof, it should have been rejected.

The consequence is, that the judgment must be reversed, and the cause remanded.