(76 South. 982)

### THOMPSON v. WARE et al. (8 Div. 21.)

(Supreme Court of Alabama. Nov. 15, 1917.)

**1. PRINCIPAL AND AGENT ⬯97 — POWER OF ATTORNEY—CONSTRUCTION.**

A power of attorney to collect notes and mortgages given by the lender to her attorney, who negotiated the loans, should be construed in the light of surrounding circumstances.

**2. PRINCIPAL AND AGENT ⬯105(3), 111(2) — POWER OF ATTORNEY TO RECEIVE PAYMENT OF MORTGAGE.**

Where a lender of money gave to her attorney, who negotiated the loans, power of attorney to receive and hold in charge any or all of the notes and mortgages which she might turn over to him for collection, he to collect the interest and give receipts, or, in the lender's absence, to sign her name as attorney, also to collect all mortgages and notes when due, etc., giving receipts, the attorney had authority to receive payment of a mortgage negotiated by him, though it had not been delivered to him by the lender, and also to satisfy it of record.

**3. PRINCIPAL AND AGENT ⬯120(6)—AUTHORITY—EVIDENCE.**

In a suit to foreclose a mortgage, respondents setting up that they had paid plaintiff's attorney, the fact of agency being established, acts of the attorney in satisfying other mortgages of record were admissible, though concerning other transactions.

───────

4. PRINCIPAL AND AGENT ⊕⟿105(6) — PAY-
MENT TO AGENT OF MORTGAGEE—LACK OF
POSSESSION OF ORIGINAL SECURITIES.

Where the agent of the mortgagee has actual authority to receive payment of the note and mortgage without possession of the securities, the mortgagors are protected in paying the mortgage indebtedness to the agent, who has not the original securities.

Appeal from Circuit Court, Madison County; R. C. Brickell, Judge.

Bill in equity by Mary F. Thompson against Sarah E. Ware and another. From a decree dismissing the bill, complainant appeals. Affirmed.

Appellant, Mary F. Thompson, filed this bill against the appellees for the foreclosure of a mortgage on certain real estate situated in Madison county, Ala., executed by the appellees to the appellant in September, 1911. It was the contention of the respondents that the mortgage had been fully paid; the same having been paid to one Turner Petty, who, it is insisted, was the agent of the complainant, the mortgagee, and who, the evidence shows, subsequently absconded. That a sufficient sum was paid to said Petty to fully satisfy said mortgage indebtedness is without dispute. On August 1, 1912, the complainant executed a power of attorney to said Turner Petty, which was filed of record August 15, 1912, and which reads as follows:

"Exhibit A—Power of Attorney.
"Turner Petty, Attorney at Law, Huntsville, Ala.

"State of Alabama, County of Madison.

"Know all men by these presents that I, Mary F. Thompson, of Madison county, state of Alabama, do hereby constitute and appoint Turner Petty, of Madison county, state of Alabama, my true and lawful attorney for and in my behalf to receive and to hold in charge any or all of my notes and mortgages which I may turn over to him, for the purpose of collection, and he shall collect the interest on the same, and give receipt for same, or in my absence signing my name by him as attorney, as I may direct. Said Turner Petty is to give written receipt to Mary F. Thompson for all papers delivered to him; also to collect all mortgages and notes when due, giving receipt therefor, and have the power of attorney to mark the said mortgage or note paid in full, and in my absence to cancel the mortgage on the records at the courthouse and wherever else they may appear on record, giving the said Turner Petty the power, in my absence, to satisfy such mortgages as fully and completely as though I had marked them satisfied myself in person. This power of attorney is given for the express purpose of giving the said Turner Petty the power and authority, as I may advise, to collect any or all mortgages and notes that may come due to me from time to time and to receipt for same and mark same satisfied, as above stated.

"I, Mary F. Thompson, do hereby ratify and confirm whatsoever my said attorney may do in the premises, according to contract.

"Given under my hand and seal this the 1st day of August, 1912.        Mary F. Thompson."

Demand was served upon the complainant to mark the record of the mortgage satisfied, and also to show the payments that had been made thereon. The following is a copy of what appears on the record in answer to such demand, appearing as Exhibit A to the testimony of the witness Blanton:

"Exhibit A.

"The following partial payments have been made upon the within mortgage on the following dates:

Sept. 10, 1912................. $36 00
Sept. 18, 1913................. 10 00
Sept. 19, 1913................. 26 00
Sept. 16, 1914................. 36 00
Sept. 11, 1915................. 36 02
Oct. 22, 1915................. 50 00

"The total unpaid amount secured by this mortgage on September 7, 1916, was $432.80, and the same is still the amount unpaid, with such interest as has accrued from that date to this date, September 15, 1916.

"Mary F. Thompson, as Mortgagee."

Said witness Blanton also testified that there was found on the record of the mortgages of said Madison county entry of satisfaction on the margin thereof of the following mortgages executed to the said Mary F. Thompson: By one J. M. Lee and wife, and entry of satisfaction dated December 4, 1913; another by James B. Lines and wife, and entry of satisfaction dated November 18, 1914; another by A. D. McLean, and entry bearing date of July 12, 1915; and another by James T. Baker and wife, being marked satisfied December 14, 1915—each of which entries of satisfaction was in the handwriting of said Turner Petty, and each of which made reference to the "power of attorney in Mortgage Book 114, p. 439."

At the time of the payment in full of said mortgage the mortgagors received the following receipt:

"Exhibit C.
"No. 590.                    Jan. 31, 1914.

"Received of Sarah E. Ware and R. T. Bentley four hundred sixty-four and 25/100 dollars for Mrs. Thompson's mortgage in full.

"$464.25.                    Turner Petty."

The note security for which the mortgage was executed reads in part as follows:

"Turner Petty, Attorney at Law, Huntsville, Alabama.

"$450.00.                    Huntsville, Alabama.

"For value received we hereby promise to pay at the law office of Turner Petty, Huntsville, Alabama, to Mary F. Thompson or order, the sum of four hundred and fifty ($450.00) dollars, with interest from date at the rate of eight per centum per annum, due and payable one year after date, together with the interest thereon."

And bears thereon the following indorsements:

"Rec'd interest on within note to Sept. 6, 1912.
"Rec'd interest on within note to Sept. 6, 1913.
"Rec'd interest on within note to Sept. 6, 1914.
"Rec'd interest on within note to Sept. 6, 1915.
"And $50.00 on principal on Oct. 22, 1915."

The trial court concluded that the mortgage debt had been fully paid, and entered a decree dismissing the bill, from which the complainant prosecutes this appeal.

⊕⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Betts & Betts and W. F. Esslinger, all of Huntsville, for appellant. Blanton & Ford and Lanier & Pride, all of Huntsville, for appellees.

GARDNER, J. It is without dispute that the mortgagors (respondents to this bill) had paid to one Turner Petty, an attorney at Huntsville, Ala., a sufficient sum to discharge the entire mortgage indebtedness prior to the filing of the bill in this cause. The sole question therefore for determination is the sufficiency of the evidence to justify the conclusion that said Petty, as the agent for the mortgagee, acted within the scope of his authority in collecting the amount due on the mortgage.

The loan was made in September, 1911. The mortgagors applied for a loan to said Petty, who informed them that the money could be obtained from the complainant, Mrs. Mary F. Thompson, and that 5 per cent. would be retained from the loan as attorney's fees in payment for getting up the abstract. Petty attended to the entire matter, and the loan was consummated through him, the mortgagors having no communication whatever with the complainant, and, indeed, never having known her.

The property was insured with the loss payable clause to complainant, and Petty retained in his possession the insurance policy. Several interest payments were made by the mortgagors, as are shown in the foregoing statement of the case, each of which was made direct to said Petty by the mortgagors.

The commission paid to Petty out of the loan for negotiating the same was paid for fixing the papers and the abstract, and nothing more. The respondent testified further that at the time of making payments to the said Petty he was not in their employ as their attorney or agent. The note executed by the mortgagors shows that the same was payable at the law office of the said Petty, and on January 31, 1914, the mortgagors there paid to said Petty the sum of $464.25, which was in full payment of the balance due thereon.

[1] On August 1, 1912, the complainant executed a power of attorney to said Petty, which is set out in the statement of the case. It is insisted on the part of counsel for complainant that powers of attorney are ordinarily subjected to strict construction (Scarborough v. Reynolds, 12 Ala. 252; Brantley v. So. L. I. Co., 53 Ala. 554), and that the power of attorney here in question should be construed as limiting the authority of said Petty to the collection of only those mortgages which she had delivered to him, and for which he had executed to her his receipt. This power of attorney, however, should be construed in the light of surrounding circumstances. As said by the court in Brantley v. So. L. I. Co., supra:

"All contracts must be read in the light of surrounding circumstances, the occasion which gave rise to them, the relative position of the parties, and their obvious design as to the objects to be accomplished must be looked at, in order to arrive at their true meaning, and to enable the court to carry out the intention of the parties."

[2] A careful reading of this power of attorney will disclose that it contains language sufficiently broad and comprehensive to confer upon said Petty the authority exercised by him in the instant case, especially so when viewed in the light of surrounding circumstances.

[3] Numerous instances of the exercise of this power of attorney by Petty are shown by the satisfaction of records of several mortgages executed to the complainant with special reference to the power of attorney for his authority in so doing, all of which appear in the statement of the case. The fact of agency being established, these acts on his part were therefore admissible, although concerning other transactions.

"Acts and declarations of one whose agency is the subject of inquiry, though incompetent when there is no other evidence of agency or of ratification, become competent for consideration in determining both the fact of agency and the scope of authority originally given, when shown in connection with other evidence of agency. McClung v. Spotswood, 19 Ala. 165. And in such connection circumstances and transactions which have no direct connection with the issues tried may be considered when they are such as illustrate the general nature of the business intrusted to the agent. Lytle v. Bank, 121 Ala. 215 [26 South. 6]; U. S. L. I. Co. v. Lesser, 126 Ala. 568 [28 South. 646]." Birmingham Min. R. R. Co. v. Tenn. C., I. & R. R. Co. et al., 127 Ala. 145, 28 South. 679.

It was also shown by the respondents that in December, 1912, one Campbell applied to complainant for a loan of money, to which she replied that "she did not know whether she had the money or not; to see Lawyer Petty; he was her lawyer and attended to her business; if he could get the money from him, it was all right; so he went to see him and got the money." This witness also testified that complainant told him Petty usually charged $25, which was paid by the applicant for the loan, but that she would see that he only charged him $5, and this was the amount which he paid.

At the time of paying the balance due in full on said mortgage the mortgagors received a receipt from said Petty, but did not obtain possession of their note and mortgage, the latter telling them to come down in a day or two, and he would go to the courthouse and mark the same satisfied and turn over to them their note. Petty subsequently left the country, and the mortgagors obtained their first information that complainant claimed her mortgage was not paid in August or September, 1916, about two months after Petty absconded.

[4] Appellant's counsel insists that the mortgagors are not protected in the payment of the mortgage indebtedness to said Petty, for the reason that it does not appear that he had in his custody at the time the original

note and mortgage, citing Hughes v. Clifton, 147 Ala. 531, 41 South. 998; Smith v. Kidd, 68 N. Y. 130, 23 Am. Rep. 157. The rule, however, recognized in these cases, has no application to cases in which it appears that the agent has actual authority to receive the payment without possession of the securities. 31 Cyc. 1772.

In the instant case we are persuaded, after a careful review of all the evidence, that in this particular transaction Petty was acting within the scope of his authority in the collection of the amount due on this mortgage indebtedness, whether he had actual possession of the note and mortgage at the time or not.

We therefore conclude that the decree of the court below in dismissing the bill is correct, and the same will accordingly be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.