THIGPEN et al. v. ARANT. (3 Div. 713.)

(Supreme Court of Alabama. Oct. 15, 1925.)

1. **Principal and agent** ⚷160½—**Employment by mortgagor of mortgagee's agent to obtain loan to discharge mortgage makes him agent of mortgagor, who is liable for agent's conversion of money.**

Where mortgagor employed mortgagee's agent, without mortgagee's knowledge, to obtain a loan to discharge mortgage, and such agent converted money to own use, mortgagor must stand loss, though agent was authorized to accept payment of mortgage, since in matter of obtaining loan he was agent of mortgagor.

2. **Principal and agent** ⚷111(2)—**Release by mortgagee's agent of part of mortgage, acting within scope of authority, binding on mortgagee.**

Where power of attorney of mortgagee's agent was on record, and such agent had authority to receive payment of mortgage debt, and release of mortgage was within ordinary scope of agent's business, release by agent in margin of record of part of mortgage on receipt of payment was binding on mortgagee.

3. **Principal and agent** ⚷106—**Where mortgagee's agent was employed by mortgagor to obtain loan, he remained agent of mortgagor in transmitting money to mortgagee.**

Where mortgagor employed mortgagee's agent to obtain loan to pay off mortgage, and money was left with agent to pay mortgagee, which was not done, he remained agent of mortgagor in transmitting money under rule that, where agent of one party is appointed agent of another in adverse interest for a certain purpose, each party stands in relation of principal as to matters intrusted by him to agent.

4. **Mortgages** ⚷290—**Bill by assignee of senior mortgage and purchaser from alienees of mortgagor to marshal assets held proper.**

A bill by assignee of senior mortgage to marshal assets by having lands conveyed by mortgagor subsequent to mortgage sold in inverse order of their alienation, but to exempt part of land purchased by himself, which was released by second mortgagee, is proper, though such remedy is ordinarily left to be invoked by alienee against common debtor and other alienees holding under subsequent conveyances, and must be claimed to be enjoyed.

5. **Mortgages** ⚷290—**Land of assignee of senior mortgage, purchased from alienees of mortgagor released for value by second mortgagee, is exempt from process marshaling assets in favor of senior mortgage.**

Plaintiff purchased parcels of land from alienees of mortgagor on which there were

two prior mortgages, and obtained a release from second mortgagee of part of land on payment to mortgagee of purchase money. Plaintiff then obtained assignment of senior mortgage covering all land and brought suit to foreclose. *Held*, both plaintiff and second mortgagee are entitled to have parcels of property conveyed by mortgagor after execution of mortgages subjected to payment of first mortgage in inverse order of alienation, but land purchased by plaintiff is exempt from such process and from liability to second mortgagee, since by paying full consideration for its release the second mortgage was satisfied pro tanto.

**6. Subrogation ⬅️28—Lender not subrogated to mortgage, where money paid to mortgagor's agent was converted by agent.**

Where mortgagor employed mortgagee's agent to obtain loan on security of mortgage, to pay it off, which was obtained, but converted by agent, the mortgagor must bear loss, but lender is not thereby subrogated to mortgage.

**7. Mortgages ⬅️290—Order of payment to satisfy senior and junior mortgages from land sold by mortgagor after mortgages stated.**

Where mortgagor made a second mortgage, and sold parcels of property through various conveyances to plaintiff, and plaintiff obtained release from second mortgagee of part of property and an assignment of senior mortgage on suit to foreclose senior mortgage, the rights of parties are, first, to have remaining land of mortgagors sold and proceeds divided to pay costs, plaintiff's mortgage, second mortgage, and balance, if any, to other debts of mortgagor; and, second, to have land alienated by mortgagor sold in inverse order of alienation, and proceeds applied to balance due plaintiff, and then to balance due second mortgagee.

Appeal from Circuit Court, Conecuh County; John D. Leigh, Judge.

Bill in equity by B. D. Arant against Charles A. Thigpen, G. J. Peagler, and others, with cross-bill by Thigpen and Peagler. From the decree, cross-complainants appeal. Reversed and remanded.

Lane & Lane, of Greenville, for appellants.

When a senior lienor holds a lien on two funds, while the junior lienor holds on only one, the latter has an equity to compel the former to first foreclose against the fund the junior lienor cannot reach. Chandler v. Kyle, 176 Ala. 184, 57 So. 475; Henderson v. Steiner, Lobman, 202 Ala. 325, 80 So. 407; 26 Cyc. 927; Orr v. Blackwell, 93 Ala. 212, 8 So. 413; Henderson v. Ala. Gold L. I. Co., 72 Ala. 32. While the prior grantees have the right to have the lands sold in the inverse order of sale, this right cannot be invoked for them by the foreclosing mortgagee. Int. L. & L. Co. v. Logan, 196 Ala. 196, 72 So. 36; Aderholt v. Henry, 87 Ala. 415, 6 So. 625, 6 L. R. A. 451; 18 R. C. L. 473; Am. & Eng. Ency. Law (2d Ed.) 1277; 18 R. C. L. 9; 27 Cyc. 2; Howser v. Cruikshank, 122 Ala. 263, 25 So. 206, 82 Am. St. Rep. 76;

Threefoot v. Hillman, 130 Ala. 244, 30 So. 513, 89 Am. St. Rep. 39. Where one employs an attorney to procure a loan to pay off a mortgage, and the attorney fails to pay it off, it is the loss of the borrower. Etheridge v. Caffey, 206 Ala. 474, 90 So. 286. Authority by the lender to make loans and collect when due is not authority to release lands from mortgages of record.

B. E. Jones, of Evergreen, and Hugh M. Caffey, Jr., of Brewton, for appellee.

Where lands subject to a lien have been aliened in separate parcels successively, the mortgagee may satisfy his lien out of the lands remaining in the grantor if possible, and, if that is insufficient, may resort to parcels alienated in the inverse order of sale. Int. L. & L. Co. v. Logan, 196 Ala. 196, 72 So. 36; Howser v. Cruikshank, 122 Ala. 256, 25 So. 206, 82 Am. St. Rep. 76; Farmers', etc., Ass'n v. Kent, 117 Ala. 624, 23 So. 757; Relfe v. Bibb, 43 Ala. 519; Mobile Marine Dock v. Huder, 35 Ala. 713; 18 R. C. L. 468. When the equity of marshaling securities and the equity of enforcing payment of liens against lands in inverse order of alienation are in conflict, the latter will prevail. 18 R. C. L. 470; Newby v. Fox, 90 Kan. 317, 133 P. 890, 47 L. R. A. (N. S.) 302. The doctrine of marshaling assets has no application as between creditors of different persons. Chandler v. Kyle, 176 Ala. 184, 57 So. 475; Robinson v. Lehman-Durr, 72 Ala. 401; Blakemore v. Wise, 95 Va. 269, 28 S. E. 332, 64 Am. St. Rep. 781; Boone v. Clark, 129 Ill. 466, 21 N. E. 850, 5 L. R. A. 276; 93 N. J. Law, 127, 107 A. 38, 5 A. L. R. 280; Carter v. Neal, 24 Ga. 346, 71 Am. Dec. 136; Sterling v. Brightbill, 5 Watts (Pa.) 229, 30 Am. Dec. 304; 18 R. C. L. 460. Marshaling assets will not be enforced, so as to work injustice to the first mortgagee, the mortgagor, or third persons. 2 Jones on Mortgages (7th Ed.) § 875; 26 Cyc. 931; 18 R. C. L. 462. Crumpton was the general agent of Thigpen. Thompson v. Ware, 200 Ala. 624, 76 So. 982; Thompson v. Atchley, 201 Ala. 398, 78 So. 196; Coston-Riles Co. v. Ala. M. & S. Co., 209 Ala. 151, 95 So. 577; Langham v. Jackson, 211 Ala. 416, 100 So. 757. The effect of the release was to extinguish the mortgage lien. 2 Jones on Mortgages (7th Ed.) § 985. Attorney's fees for foreclosing a mortgage are a part of the mortgage indebtedness. Pollard v. Am. F. L. M. Co., 139 Ala. 183, 35 So. 767; Langley v. Andrews, 142 Ala. 665, 38 So. 238; Faulk v. Hobbie Gro. Co., 178 Ala. 254, 59 So. 450.

SAYRE, J. Crumpton owned 550 acres of land in Conecuh county. In 1908 he borrowed money from Mrs. Haralson, and executed a mortgage upon the entire tract to secure repayment. In 1909 he sold and con-

---

veyed the entire tract to G. W. Moye at what appears to have been the full value of the unincumbered property. At the same time Moye made a mortgage to appellant Thigpen to secure money borrowed. In 1911 Moye sold and conveyed 80 acres of the tract to Jones, who sold 40 acres to appellee, Arant, and in 1912 Moye sold and conveyed 39 acres to appellee. Thigpen received the purchase money for these 79 acres, and thereupon executed in favor of appellee releases of the two parcels constituting these 79 acres from the lien of the mortgage he held from Moye. As to one of these parcels he executed the release on the margin of the record by his own hand; as to the other the release was executed by "Crumpton, attorney in fact." In 1915 appellee purchased an additional parcel of 20 acres from the Pughs to whom Moye had sold it. None of these parties were aware of the existence of the Haralson mortgage. But, after Crumpton's death in 1916, the Haralson mortgage was placed in the hands of an attorney for collection, whereupon appellee, Arant, in order to protect his interest in the parcels which he had purchased, secured for value an assignment of the Haralson mortgage, and filed the bill in this cause to foreclose, praying that the part of the land retained by Moye and those parcels sold and conveyed to other parties be sold in the inverse order of their alienation. Moye and the subsequent alienees were made parties defendant, but they suffered decrees pro confesso to be entered against them. Thigpen was also made a party defendant, as was Peagler, to whom Moye had, in 1914, executed a mortgage of so much of the tract as he had retained to secure a loan. Thigpen and Peagler filed cross-bills, and are now prosecuting this appeal.

[1, 2] When Moye learned that Thigpen was pressing Crumpton, his agent, to collect, he (Moye) employed Crumpton to get a loan of $3,000 for him from Peagler, with which he intended to pay off and discharge Thigpen's mortgage. Crumpton got the loan from Peagler on the security of Moye's mortgage, but converted the proceeds to his own use, and shortly afterwards died. Thigpen knew nothing of this transaction by and between Moye, Crumpton, and Peagler. The parties to this cause are in disagreement as to where the loss of this $3,000 should fall. We think it was Moye's loss. It is true that Crumpton was Thigpen's general agent; that is, he had authority from Thigpen in his name and stead to do all acts necessary and proper to be done in connection with Thigpen's numerous loans of money in Conecuh county—to transact all the business of his principal in that connection. In virtue of the power of attorney placed upon the public records of the county and the reasonable inference to be drawn from the long practice observed by the parties in the transaction of Thigpen's mortgage loan business in the county (Thompson v. Ware, 200 Ala. 624, 76 So. 982), Crumpton had at least apparent power to bind Thigpen by whatever was usual and proper in the transaction of that business, and, in the absence of known limitations, third persons had a right to act on the presumption that the scope and character of the business Crumpton was employed to transact measured the extent of his authority. Wheeler v. McGuire, 86 Ala. 402, 5 So. 190, 2 L. R. A. 808; Montgomery Furniture Co. v. Hardaway, 104 Ala. 100, 16 So. 29; British & American Mtg. Co. v. Cody, 135 Ala. 622, 33 So. 832; 2 C. J. p. 581, § 222. Crumpton had authority to receive payment of all mortgage debts due to Thigpen in Conecuh county, and, since the satisfaction and release of mortgages in full or in part after payment in full or in part would seem to fall within the usual and ordinary scope of the business in which they were engaged, we think Crumpton had authority in Thigpen's name to note upon the margin of the record of the mortgage held by the latter a release of so much of the lands covered thereby, 39 acres, as complainant Arant had purchased from Moye, the purchase money having been paid to Crumpton as Thigpen's agent in reduction of the amount of the mortgage.

[3] But we are not of opinion that the loss of the $3,000 received from Peagler by Crumpton and by him converted to his own use should fall upon Thigpen. Crumpton was Thigpen's general agent to collect his mortgage dues, but in the matter of obtaining a loan for Moye from Peagler, which Moye intended should be applied in satisfaction of Thigpen's mortgage, it is clear that he was the agent of Moye. American Mortgage Co. v. King, 105 Ala. 358, 16 So. 889; Edinburgh Co. v. Peoples, 102 Ala. 241, 14 So. 656; Ginn v. New England Co., 92 Ala. 135, 8 So. 388; Allen v. McCullough, 99 Ala. 612, 12 So. 810; George v. New England Co., 109 Ala. 548, 20 So. 331; Land Mortgage Co. v. Preston, 119 Ala. 290, 24 So. 707. Assuming that the "money was left with Crumpton to pay Thigpen," as Moye testifies, in the matter of transmitting the money to Thigpen he was still the agent of Moye. When the agent of one party is appointed the agent of another in adverse interest for a certain purpose, each party stands in the relation of principal as to the matters intrusted by him to the agent. 2 C. J. p. 448, § 47. In the matter of getting the loan from Peagler and transmitting the money to Thigpen it would seem that Crumpton's first duty was to Moye, for that was the purpose of his special appointment by Moye, and that the consequences of his dereliction in the performance of that duty, by reason of which the money failed to reach its destination, should not be visited upon Thigpen, who knew nothing of the matter.

[4] So then, the case presented may be stated as follows: By his bill complainant, Ar-

ant, recognizing what he conceives to be the equities of all parties interested in the land, prays that, if the part of the land retained by Moye be insufficient to satisfy his (the Haralson) mortgage, such parts as were conveyed by Moye to his several alienees be sold in the inverse order of their alienation, but, since he himself, without actual notice of the mortgage which he now claims as assignee, had purchased from Moye and his alienees and paid for a part of the land, 99 acres, he prays that this part be omitted from the proposed process. This equity of marshaling assets is ordinarily left to be invoked by an alienee against the common debtor, or, as in this case, the common fund, viz. the land, and other alienees holding under subsequent conveyances, and, ordinarily, must be claimed to be enjoyed (Threefoot v. Hillman, 130 Ala. 244, 30 So. 513, 89 Am. St. Rep. 39), but no objection against the propriety of its recognition by complainant in this cause without waiting for aggressive action on the part of some one of the several subsequent alienees is perceived; in other words, it is no objection to complainant's bill that he offers to do equity, though he might have waited for the assertion of that peculiar equity to come from some one of the defendants.

[5] The brief for appellant, cross-complainant Thigpen, seems to proceed upon the idea that the 99 acres purchased by complainant, Arant, from the immediate or remote alienees of Crumpton should be sold for the satisfaction of complainant's mortgage debt along with the rest of the tract conveyed by Crumpton to Moye. Appellant, cross-complainant Peagler, is not affected by this question. His mortgage does not include the lands released by Thigpen, but only that part of the Crumpton tract which remained in the ownership of Moye at the date of his (Peagler's) mortgage. As second mortgagee with covenants of warranty, that is, as Moye's mortgagee subject as matter of law to the Haralson mortgage, Thigpen comes within the influence and operation of the equitable rule that parcels of the property conveyed by a mortgagor after the execution of his mortgage shall on timely application be subjected to the first mortgage debt in the inverse order of their alienation. 18 R. C. L. p. 471, § 19. But this equity may be displaced by another of higher order. As against the parties defendant who have suffered decrees pro confesso, all parties defendant except Thigpen and Peagler, complainant, Arant, may have the land covered by the mortgage under which he claims sold in parcels in the inverse order of their alienation. Such is also the equitable right of cross-complainant, Thigpen, and his right extends to and includes the 20 acres of that part of the land which was sold by Moye to the Pughs and by them conveyed to complainant. But the 79 acres—including the parcel sold by Moye to complainant, and that part of the parcel sold by Moye to Jones which was by Jones conveyed to complainant—complainant is entitled, as against Thigpen, to have exempted from this process and from liability to the latter's mortgage in any sort by reason of the fact that the latter in consideration of the purchase money, paid to him, released these 79 acres from the mortgage held. True, Arant took his assignment of the Haralson mortgage after the releases referred to, and at the time of the execution of such releases Thigpen had no actual knowledge of the existence of the Haralson mortgage, though it had been placed upon the public records; but these circumstances should not be held to be of any consequence in this connection, for, having for value, adequate consideration, we may presume, released his mortgage as to these 79 acres, that is, having accepted satisfaction of his mortgage pro tanto, we can see no equity in the proposition, as we understand it, that he should again be permitted to realize upon their value by requiring complainant to sell the same acres before resorting to the rest of the land for the satisfaction of the mortgage held by him.

[6] Appellant Peagler conceives that he is not opposed in interest to appellant Thigpen, and these two appellants are represented by a common brief. Peagler does claim, however, that he should be subrogated to Thigpen's mortgage; but this, of course, is upon the assumption that the money lent by him is applied in satisfaction of that mortgage. We have stated our conclusion that the loss of that money should be visited upon Moye. It results that no case for the application of the doctrine of subrogation is shown.

[7] From the views thus expressed it follows that the 370 acres remaining in Moye's possession should first be exposed for sale and afterwards in the inverse order of their alienation the several parcels aliened by him, saving the 79 acres now held by complainant under conveyances from Moye and Jones. Out of the proceeds of the 370 acres now held by Moye shall be paid, first, the costs; next the mortgage debt due to complainant, together with his reasonable attorneys' fees for services rendered in this cause; next the balance due on Thigpen's debt; the balance, if any, to be applied in satisfaction of Peagler's debt. The proceeds realized from the sale, if necessary, of the several other parcels shall be applied, first, in satisfaction of the balance, if any, remaining due on complainant's debt; the balance, if any, so realized shall be applied to the payment of the balance, if any, due on Thigpen's debt.

The decree rendered in the circuit court, sitting in equity, was not in entire agreement with the views here expressed, and will be reversed. In order that a decree may be rendered in accordance with what we have

said, the cause will be remanded to the circuit court.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.