(118 So. 666)

LAWLER v. CORINTH BANK & TRUST CO.
(8 Div. 992.)

Supreme Court of Alabama. Nov. 15, 1928.

E. B. Fite and K. V. Fite, both of Hamilton, Stell & Quillin, of Russellville, and Goodwyn & Goodwyn, of Montgomery, for appellant.

Williams & Chenault, of Russellville, for appellee.

BOULDIN, J. Appellant, P. H. Lawler, filed his statutory bill to quiet title to real estate.

Appellee, Corinth Bank & Trust Company, by answer claimed a mortgage incumbrance on the land, viz. a mortgage for $1,844.64 executed by complainant to his brother, J. J. Lawler, of date February 9, 1921, due October 15, 1921, to secure a negotiable note of even date. Respondent claimed as a holder of the note and mortgage in due course. By further pleading, complainant alleged payment of this mortgage. This became the controlling issue in the case. The trial court found the issues for respondent upon the evidence, and rendered a decree of foreclosure upon its cross-bill. Under the evidence, we conclude the bank was the holder of the paper in due course, as collateral for the indebtedness of J. J. Lawler, the mortgagee, to the bank.

P. H. Lawler does not claim to have paid the mortgage, nor any part of it, to the bank, nor to any one claiming to act for the bank. In the autumn of 1922 he did procure a loan of $1,600 from the Federal Land Bank, which sum, less deductions for stock and expenses, was turned over to his brother, J. J. Lawler, for credit on the mortgage. In the following February he executed a crop mortgage to his brother for $541.30, claimed by them to represent the balance on the mortgage held by respondent bank. Admittedly, J. J. Lawler did not have the possession of the mortgage at the time. P. H. Lawler disclaims any knowledge that the Corinth Bank held the mortgage, and all his dealings were with his brother as payee and supposed holder of the mortgage. This was no protection to him. The maker of negotiable paper, by well-known rules, has the duty to ascertain the holder of the paper when payment is made. The issue therefore turns upon the authority of J. J. Lawler to make collection of this paper as agent for the bank, or upon ratification of his acts after knowledge.

The evidence, direct and circumstantial, has been considered with much care. To discuss it in detail would extend this opinion to great length with no resultant benefits.

The burden was on complainant to prove the agency of J. J. Lawler. His claim to a blanket authority to collect any and all collateral held by the bank and use the proceeds to take care of other obligations involves a virtual surrender of the collateral. As for written evidence, it clearly appears that, after this alleged authority conferred by the cashier, Holley, the bank had loaned a further sum of $2,500 to take care of J. J. Lawler's indebtedness in the market as a merchant, and had taken a note and mortgage, of date December 21, 1921, for the aggregate indebtedness of $9,489.64, expressly pledging as collateral security notes and mortgages attached. The weight of the evidence is that the P. H. Lawler note and mortgage were among them—were then held by the bank. In the same transaction, and as further security, J. J. Lawler assigned his equity in collaterals then held by Hodges State Bank.

Another written reference to this matter appears in an alleged carbon copy of a letter claimed to have been written by J. J. Lawler to Corinth Bank & Trust Company on December 15, 1922. This alleged letter (which is set out in the report of this case) was more directly involved and considered in the case of Corinth Bank & Trust Co. v. H. R. Felt-

354

man, 118 So. 382,[1] decided at the present term. In the Feltman Case we reached the conclusion that no such letter accompanied the check therein mentioned.

We here note that no cotton was shipped during the cotton season of 1922. The "158 B/C" were shipped during the season of 1921. It sufficiently appears that a separate cotton business had been conducted in the name of H. R. Feltman & Co.; that a checking account was allowed to buy the cotton, the cotton shipped, and an advance of 18 cents per pound credited to the dealer; that, a decline in price ensuing, the cotton was closed out in the spring of 1922, leaving an unpaid overdraft on the cotton account. There is complaint in the record as to the time and price at which the bank closed out the cotton; but this can add nothing to an alleged statement, "I figure I have enough money in the 158 B/C to take care of the three notes," given as a reason why the bank is asked to send the notes to him.

■ One theory is a ratification of the act of J. J. Lawler in collecting and using the money paid by his brother in that a chattel mortgage for $541.30 was given for the alleged balance of the real estate mortgage, indorsed to the bank, and later collected. This chattel mortgage was given in February, 1923, some three months after the money was received from the Federal Land Bank. The explanation is given that they were awaiting an ascertainment of the true balance, but his alleged letter of December 15, 1922, gives the same exact balance. The mortgage of February, 1923, is a crop mortgage in usual form given by P. H. Lawler to J. J. Lawler, to secure an existing indebtedness of $541.30, and any further indebtedness incurred during the current year. It gave no notice of any connection with the real estate mortgage held by the bank.

The rules of evidence touching proof of agency in the collection of securities not in the possession of an alleged agent have been defined in Caton v. Andalusia Nat. Bank, 216 Ala. 415, 114 So. 75; Thompson v. Ware, 200 Ala. 624, 76 So. 982; Hughes v. Clifton, 147 Ala. 531, 41 So. 998.

■ Evidence, verbal or written, tending to show that the pledgee in certain cases returned collateral to the pledgor for collection, or offered to do so, does not support a claim of a general agency to collect all collateral not in his possession.

■ If J. J. Lawler had authority to collect this collateral for the bank, it must rest upon the evidence tending to support it, viz. evidence of the authority to collect and to use the proceeds, a virtual surrender of the collateral to enable Lawler to care for debts due others, and after the bank had made a loan, secured by the collateral, in order to help Lawler take care of such other debts.

There is no question here of holding out J. J. Lawler as an agent. His brother, the complainant, does not claim to have dealt with him as agent.

We are fully conscious of the great hardship which results to complainant, but, under the rules of law, and upon a careful study of all phases of the evidence, we must hold that the burden of proof on the issue of payment has not been met.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.