(133 So. 911)
## SULLIVAN v. LAWLER et al.
### 8 Div. 265.

Supreme Court of Alabama.
April 16, 1931.

W. L. Chenault, of Russellville, for appellant.

Wm. Stell, of Russellville, for appellees.

FOSTER, J.

The plaintiff claims the property sued for under the foreclosure sale of a mortgage executed by defendant to Corinth Bank & Trust

Company, dated December 2, 1921. Defendant claims that at the time of the foreclosure there was nothing due on the mortgage. Whether that was the situation was the chief issue of fact in this case tried by the judge without a jury.

After the execution of that mortgage which secured an individual debt of appellee, he conducted business with H. R. Feltman as Feltman & Co. That company did business with the bank and purchased cotton under an arrangement, by which they checked on the bank for what money they needed to buy cotton, and shipped the cotton to it. Cotton went down in price at a time when they had a sizable lot with the bank, and they put up two collateral mortgages, one by Wallace, and one by P. H. Lawler, to better secure the account. The cotton was sold by the bank, and finally suits arose with it, one with this appellee relating to the Wallace land (Corinth Bank & Trust Co. v. Lawler, 218 Ala. 83, 117 So. 620), and one with P. H. Lawler (218 Ala. 352, 118 So. 666). In fact much litigation has arisen out of their dealings. Corinth Bank & Trust Co. v. Feltman, 218 Ala. 191, 118 So. 382; Corinth Bank & Trust Co. v. Wallace, 218 Ala. 66, 117 So. 619; Corinth Bank & Trust Co. v. Cochran, 219 Ala. 81. 121 So. 66; Corinth Bank & Trust Co. v. Wallace, 22 Ala. App. 272, 117 So. 618.

The question at issue in the two cases first above named was whether the collateral mortgages had been paid. They were directly related to the Feltman & Co. business, and seemed largely to depend upon whether the bank had authorized this appellee or the firm as its agent to collect them. In those cases appellee testified to the transactions with Holly, cashier of the bank, now dead. The issue did not relate to the existing indebtedness of this appellee individually on the mortgage which is the basis of appellant's title. His testimony given at the instance of himself in one case, and of P. H. Lawler in the other, did not on direct examination relate to the question of whether that debt was still unpaid. But on cross-examination the bank went into the question, and secured some admissions which may not have fully given all details in respect to the issue. But taken as given, it indicated an admission that the mortgage debt was not fully paid. But there were certain qualifications referred to, but not fully explained.

On the trial of the case now under review, the plaintiff introduced the full text of this testimony as being in the nature of an admission, and specially directed attention to those features material to the issue in this case. Appellee then offered to testify further in explanation of the transaction with Holly relating to the satisfaction of this mortgage debt not fully covered in that examination, and especially with reference to what was brought out on his cross-examination in these cases. The court declined to allow this.

▇ The right of appellee thus to testify is controlled by a proper interpretation of our section 7721, Code. The competency of defendant as a witness may be and is waived by plaintiff if he calls the defendant to testify to the matter in question. In our case of Cousins v. Jackson, 52 Ala. 262, defendant made proof of certain extrajudicial admissions of plaintiff relating to a transaction with deceased, as to which plaintiff was incompetent to testify. Plaintiff then testified to his version of the alleged admission in contradiction of the testimony which defendant had introduced. And then to strengthen his version of the admission offered to testify what was the truth of the transaction. This court held that, for such purpose, the testimony thus offered should have been admitted. The value of this authority on that point is weakened, if not in fact destroyed, by a criticism of it in the later case of Miller v. Cannon, 84 Ala. 59, 4 So. 204. This exact question is not here presented. See Warten v. Black, 195 Ala. 93, 70 So. 758.

But we have here a case where plaintiff did not offer an extrajudicial admission of defendant, but the full text of his testimony in the other cases. We again note as pertinent that which we have mentioned, that the testimony of the witness which is particularly sought here to operate as an admission that the mortgage debt was not paid is that which was elicited by the bank, with which this plaintiff is in privity.

There is a line of cases well reasoned and thoroughly considered, with statutes similar to ours in this respect, which hold that after such evidence is brought out in another case from the witness who later became disqualified, either by calling him for direct examination by the adverse party or on a cross-examination, and such adverse party introduces in the pending cause the testimony of the witness thus given, after he had become disqualified to testify, unless called by such adverse party, it is in legal effect calling the witness anew, and opens the door to him to testify fully as to the transaction. The cases make a distinction between that situation and one in which the adverse party makes proof of an admission by the disqualified witness made voluntarily or at his own instance, and under no compulsion by court process. Cole v. Sweet, 187 N. Y. 488, 80 N. E. 355; (on cross-examination) Smith's Appeal, 52 Mich. 415, 18 N. W. 195; Lilley v. Mutual Benefit Life Ins. Co., 92 Mich. 153, 52 N. W. 631.

In the case of Enwright v. Griffith, 169 Wis. 284, 172 N. W. 156, it was held that, when the adverse party introduced the evidence of the disqualified witness given in another case, it was a waiver of the disqualification, though it did not appear that the particular

matter thus brought out on the other trial was at the instance of such adverse party.

■ We are not now called upon to say whether the introduction by his adversary of such evidence which may have been offered by the disqualified witness himself on his own direct examination would have the effect of waiving his disqualifications in the later case. But, when the witness is called upon to testify either on direct or cross-examination by the party to a cause who is his adversary in the later suit, he is bound to give the evidence; it is not in some sense his voluntary statement, and he should not be deprived of a full explanation of the transaction as to which his testimony was thus elicited by his adversary, after it has been introduced in the later case.

■ We are not prepared to say that the rulings of the court in this respect did or did not prevent defendant from explaining his version of the transaction with Holly as fully as was necessary. But on another trial, under the circumstances now appearing, he should have the privilege, without the disqualification of the statute, of explaining the details of such matters as were brought out on his cross-examination in the other cases, if such cross-examination is again introduced as an admission against him.

In granting the motion for a new trial, no indication appears upon what ground the court acted. If this was done because he thought, after further consideration, that the evidence did not justify the judgment, we would not be willing to say that he was so clearly in error that we should reverse the judgment. Not knowing that such was not the ground on which the court acted, we are persuaded that the judgment should not be disturbed by us.

■■ It is argued that the ruling of the court granting a new trial should be sustained for the alleged error of the court in overruling demurrers to the complaint. We will consider this also for the benefit of another trial. The complaint describes certain lands by particular description, and includes "the warehouse on the property of the Alabama Western Railway Company in the town of Hodges, Alabama, said warehouse being forty feet wide and sixty feet long, and s'tuated on the east side of the railroad track and being the warehouse heretofore owned by J. Lennon and Company." The particular ground of demurrer which appellee claims

pointed out a defect is that the warehouse is not subject to an ejectment suit. The claim is that the suit merely describes the building, which is claimed to be personalty, because it is shown by the complaint to be upon the lands of another. But this contention loses sight of a well-established rule at common law on that subject. This form of action may be generally used to recover possession of a house without any claim to the land other than that incidental to the ownership of the building. Tyler on Ejectment and Adverse Enjoyment, p. 37; Sedgwick & Wait on Trial of Title to Land, § 105; 19 Corpus Juris, 1034; 9 R. C. L. 833.

It does not appear either in the complaint or in the evidence that the building by agreement never became a part of the realty, but that its status as personalty was thereby preserved and retained. Under such circumstances a form of action suitable to its recovery or for damages for its destruction as a chattel may be used. Clements v. Morton, 200 Ala. 390, 76 So. 306; Middleton v. Ala. Power Co., 196 Ala. 1, 71 So. 461.

■ But, as said in Middleton v. Ala. Power Co., supra, the prima facie intendment is that a house when erected shall be and is a part of the realty. Merely because the suit is for the recovery of a house does not imply that it is personalty, and that the purpose of the suit is to sever it from the freehold. But the contrary not appearing, it rather implies its continued existence as a part of the realty with sufficient right in plaintiff to have it remain as such. The burden is upon him who asserts it to prove that by agreement the structure was to remain a chattel and never become a part of the freehold. Powers v. Harris, 68 Ala. 409; Id., 57 Ala. 139. The use of land for the warehouse may be controlled by a contract, which is effective to maintain the status of the house as a part of the land during the period of its term.

Our judgment is that the complaint was not subject to demurrer on that ground, nor was a judgment due defendant merely because the evidence showed that the warehouse was situated upon the land of the railroad. But because the judgment of the court may have been based upon an insufficiency of the evidence to sustain that rendered for plaintiff, we feel that it should be, and it is, affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.