162 So. 379

## METROPOLITAN LIFE INS. CO. v. RECONSTRUCTION FINANCE CORPORATION.

### 4 Div. 826.

Supreme Court of Alabama.

June 20, 1935.

Steiner, Crum & Weil and Sam Rice Baker, all of Montgomery, and E. O. Baldwin, of Andalusia, for appellant.

J. C. Fleming, of Elba, and David J. Howell and Herbert F. O'Hare, Jr., both of Washington, D. C., for appellee.

BOULDIN, Justice.

Metropolitan Life Insurance Company sued Reconstruction Finance Corporation on counts for money had and received, and for destruction of the landlord's lien of the plaintiff in the proceeds of a cotton crop.

During 1930, 1931, and 1932, J. A. Henderson, Sr., was the owner of a farm in Covington county, upon which the plaintiff, insurance company, held a first mortgage, and Andalusia National Bank a second mortgage. At the close of 1930, Henderson abandoned farm operations, offered to turn it over to the second mortgagee, the bank. The bank took over the operation of the farm, and Henderson ended his connection with same, except, at the instance of the bank, he agreed that the property be rented in his name.

The operations of 1931 are not involved.

On February 10, 1932, the bank rented the farm to G. L., H. I., and G. L. Tranum, Jr., for $425, taking the tenants' note and mortgage due October 1, 1932, payable to J. A. Henderson. The bank held this note until July, 1932, when the bank procured

Mr. Henderson's indorsement thereon, and passed such rent note to the Metropolitan Life Insurance Company, the senior mortgagee, as additional collateral on account of items of such mortgage then in default.

On February 11, 1932, the Andalusia National Bank took a note and chattel mortgage from the Tranums, including the crop of that year, for $2,199.79, due October 1st of that year; and on February 12th assigned this mortgage to Reconstruction Finance Corporation as collateral for a loan the bank was then negotiating from said corporation.

When the cotton crop was ready for market, the Tranums disposed of the cotton, and turned in the proceeds, some $649.10, to the bank. It appears from the testimony of Mr. Tranum, which is not controverted, that no directions were given to the bank as to the disposition of such proceeds. He asked the bank as to what disposition should or would be made, and was informed that the fertilizer bill due the bank should first be paid, to which Mr. Tranum assented, and was informed, "We will decide about the other indebtedness."

Thereupon, on September 13th, the bank remitted to Reconstruction Finance Corporation, Birmingham, Ala., a check on Federal Reserve Bank for $1,444.90, accompanied by letter saying such check was "to cover the following partial payments on collateral notes pledged against our direct notes." The letter then listed the items collected, seventeen in number, showing the several collateral notes on which such collections were made. Included therein was $334.93 on the Tranum note for $2,199.79 above mentioned. On September 20th, another similar remittance was made, listing $70.40 to be credited on the Tranum note. Without question, these items were proceeds of the cotton crop on which the insurance company had a landlord's lien. The question is, Did this lien follow these proceeds into the hands of Reconstruction Finance Corporation, or is it entitled to protection as a bona fide holder without notice?

The following principles seem so well settled that a mere statement of same will suffice:

When the bank rented the lands to the Tranums, taking a note for the rent, payable to Mr. Henderson, a landlord's lien attached upon the crops as they came into being as security for such rent. By the transfer of this note to the insurance company, the landlord's lien passed with it.

A crop mortgage is subordinate to this landlord's lien. This priority is declared by positive statute. It does not rest on notice, actual or constructive. No provision is made for recording landlords' liens in Alabama. The fact that it is a crop mortgage charges the mortgagee with notice that it is subject to any landlord's lien which may exist. It is of no consequence whether the mortgagee knows the crops are being grown on rented land. In a word the tenant can make no disposition of a crop while growing or remaining on the land which will defeat the prior lien of the landlord.

In the absence of a waiver, his landlord's lien follows the proceeds, unless and until they pass into the hands of a bona fide holder.

It is settled law in Alabama that as an incident to this priority, if the tenant turns over the crop covered by such chattel mortgage to the mortgagee, even after removal from the rented premises, the priorities are not reversed. The basis of this rule is that the mortgagor and mortgagee are merely consummating the mortgage transaction. It is still of no consequence whether the mortgagee knows the crops were grown on rented lands. Sufficient, if his mortgage, under which he is claiming and receiving the crops, is a crop mortgage. He does not stand in the position of a bona fide purchaser of crops in payment of an existing debt after their removal from the premises, and without notice that they were grown on rented land.

The same rule applies to the proceeds if known by the mortgagee to have been derived from the mortgaged crops. Bellingrath v. Samuel et al., 219 Ala. 263, 122 So. 27, and cases there cited.

It does not follow from these principles that, if the debtor, although a mortgagor, brings money to his creditor and tenders the same as payment on his debt, the mortgagee-creditor is bound, at his peril, to ascertain the source from which the money was derived.

The basis of the rule above noted is an intentional application of proceeds of the mortgaged crop to the payment of the

crop mortgage; proceeds known, as matter of law, to be subject to any landlord's lien which may be outstanding. So, if the tenant converts the crops into money, and brings the money to the crop mortgagee for payment thereon, the mortgagee becomes a bona fide holder of such proceeds, unless he knows they were derived from the mortgaged crops, or is in possession of such facts as to reasonably put him on inquiry.

A sufficient reason for this holding is the broad principle that money is the medium for payment of debts, is presumed to belong to him who has it, not charged with a beneficial ownership in some one' else, unless earmarked, or segregated from money in general by facts and circumstances which charge the person receiving it with notice of a lien or charge thereon.

Applying these rules to the case in hand, it is clear that this money, on coming to the hands of Andalusia National Bank, was ex aequo et bono, the money of the insurance company. It had full knowledge of all the facts, was the actor in bringing about the status as to this fund. It had no lawful right to divert it to the payment of its own note to the Reconstruction Finance Corporation, or to the payment of the crop mortgage assigned to its creditor as collateral. We do not construe the testimony to show Mr. Tranum was a party to any such diversion. He looked to the bank to apply this money according to law. Nor is there any basis for the assumption that the bank was the agent for the insurance company, with any authority, express or implied, to apply this money to the payment of the chattel mortgage in the bank's interest.

What, then, of the situation of the finance corporation?

As an assignee of the crop mortgage, it occupied no better position than its assignor, the bank. It was charged with knowledge of the law, the priority of any landlord's lien which might exist upon the crop or its proceeds. Nor was the position of the finance corporation bettered by the fact that the money came to it as a payment on the bank's indebtedness also. It was earmarked by the letter of remittance as a payment on the collateral, money paid in by the crop mortgagor, not money of the bank paid on its debt.

But, under principles above stated, we do not think this letter of remittance, without more, earmarked this money as proceeds of the cotton crop. It was reported merely as a payment on the collateral mortgage. We think it too severe a rule to charge the finance corporation, whose operations were remote from the scene of action, with a duty of inquiry as to the source of the money paid on the chattel mortgage.

The case then turns on the question of the relation of agency, or other trust relation between the bank and the finance corporation in the collection and application of this money, such as would charge this money in the hands of the finance corporation with the same lien, or beneficial ownership, as when in the hands of the bank.

There is little or no conflict in evidence of fact on this point, although, we may say, there is a difference of the view between the bank officer, as a witness on the one hand, and the Birmingham representative of the finance corporation as to the import of such facts.

Without question, the season of crop movement had arrived; the bank proceeded to collect crop mortgages just as though they had never been put up as collateral. It did not have possession of the collateral.

It appears the original papers were in the custody of the Federal Reserve Bank. No collection agent other than the Andalusia Bank was provided. Indeed, it appears the course of business was to hold such collateral until maturity. If not then paid, they were sent to the finance corporation, which, in turn, sent them to the bank for payment. This paper was not yet due, but the bank had express authority to make advance payments on its notes to the finance corporation. So, the bank, interested in conserving the collateral security, which, we may add, was also a duty of the collateral holder, proceeded to collect these crop mortgages in the usual way, and remit the proceeds regularly and in numerous instances, fully disclosing by the letters of remittance that the bank was making such collections. The only authority the bank had, or pretended to have, was to make collections for and on behalf of the holder of the collateral. This was fully known to and acquiesced in by the finance corporation.

584

We have long since disapproved any rule which would require the possession of the paper as essential to an agency to collect. In view of well-known practices in large transactions, especially where going banks, the usual agencies with which the people do business, are making collections, such a rule would work untold hardships on innocent people. If, for instance, the Andalusia National Bank had not remitted these funds, would it be conscionable to hold Mr. Tranum still bound on the collateral mortgage to the extent of these funds if they were due to go to the finance corporation? We are at the conclusion that the Andalusia National Bank sustained such a relation of agency for the finance corporation, as that the act of the bank was the act of the finance corporation as affecting the right of the insurance company to this fund. Caton v. Andalusia Nat. Bank, 216 Ala. 415, 114 So. 75; Thompson v. Ware et al., 200 Ala. 624, 76 So. 982; Lawler. v. Corinth Bank & Trust Co., 218 Ala. 352, 118 So. 666; Roberts & Sons v. Williams, 198 Ala. 290, 73 So. 502; Corinth Bank & Trust Co. v. Cochran, 219 Ala. 81, 121 So. 66; Farmers' Bank & Trust Company v. Shut & Keihn, 192 Ala. 53, 68 So. 363; Bynon v. Citizens' Bank of Carbon Hill, 221 Ala. 626, 130 So. 391; Girard Fire & Marine Ins. Co. et al. v. Gunn, 221 Ala. 654, 130 So. 180; Sanders v. Gernet Bros. Lumber Co., 221 Ala. 469, 129 So. 46; 2 Mechem, Agency (2d Ed.) § 1835.

On the question of ratification by acceptance of the fund at the hands of the bank, we merely cite the following: Bell-Carns Realty Co. v. Drennen, 219 Ala. 450, 122 So. 424; Grissom v. J. B. Colt & Co., 218 Ala. 336, 118 So. 580; Sovereign Camp, W. O. W. v. Feltman, 226 Ala. 390, 147 So. 396; Abercrombie v. Martin & Hoyt Co., 227 Ala. 510, 150 So. 497; 1 Mechem, Agency (2d Ed.) §§ 434, 436.

The judgment is reversed and one here rendered in favor of appellant and against the appellee for the amount of the two remittances hereinabove shown, with interest on each from the date received by appellee.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.