25 So.2d 523

**ETHEREDGE v. HESTER et al.**

**8 Div. 480.**

Court of Appeals of Alabama.

April 2, 1946.

R. L. Almon, of Moulton, and Wm. Stell, of Russellville, for appellant.

J. Foy Guin, of Russellville, for appellees.

HARWOOD, Judge.

This is a suit based on the destruction of a landlord's lien created by Section 15, Title 31, Code of Alabama, 1940. Plaintiff and defendants in the court below occupy the same relative positions in this appeal, and for convenience will be referred to in this opinion as plaintiff and defendants. Plaintiff alleges that defendants purchased cotton seed of his tenant, George Green, on which plaintiff claimed a lien for both rents and advances, with knowledge of plaintiff's lien.

Plaintiff introduced as witnesses Mr. Grover Hester, manager of defendants' gin, Mr. George Green, the tenant, and the plaintiff. Mr. Hester testified that in the fall of 1942 George Green obtained advances from him for the purposes of picking cotton on a farm known as the Ausie Britnell place in Franklin County. Hester also hauled the cotton from this place to the gin, and after ginning the cotton purchased the seed therefrom, first deducting the amounts owed him by Green for the advances and services made and rendered. According to Hester, he was familiar with the Britnell place, owning land adjoining it, knew it was owned by Britnell and knew that Green was a tenant thereon. Upon inquiring of Green as to Britnell's interest in the cotton seed he was informed by Green that he was renting from Britnell on "a third and fourth of the corn and cotton, Green to furnish the fertilizer and get all the cotton seed." Hester at this time had no knowledge that plaintiff claimed any leasehold interest in the Britnell place, and in fact did not know plaintiff at that time.

The tenant George Green testified that he subleased the Britnell place from the plaintiff who had theretofore leased it from the owner, Mr. Ausie Britnell, "just like he got it." It was Green's understanding that he was to pay as rent one fourth of the cotton raised, furnish the fertilizer, and retain three fourths of the cotton produced and all the cotton seed as his share. Green claimed he did not remember telling Mr. Hester that he had rented the Britnell place from Mr. Ausie Britnell, but his testimony along this line was as follows:

"Q. I will ask you, did you tell Mr. Grover Hester that you had this Britnell farm rented from Mr. Britnell for the year 1942? A. No sir. I told him Mr. McKinley Etheredge (plaintiff) rented it, and I subrented it from Mr. Etheredge just like he got it from Mr. Britnell."

Mr. M. C. Etheredge, the plaintiff testified that he lives at Bell Mina, some 35 or 40 miles distant from the Britnell place which he rented from the owner, Mr. Ausie Britnell, for the year 1942 for a rental of one fourth the cotton and cotton seed, and sublet the farm to Green on the same terms. He further testified that Green's indebtedness to plaintiff at the time of this trial was far in excess of the amount involved in the value of the cotton seed, said indebtedness resulting from unpaid rent and advances.

For the defense, Mr. Walter Britnell, brother of the owner of the farm in question testified he was present at the conversation between Grover Hester and Green when Hester inquired of Green as to who his landlord was. Britnell's testimony tended strongly to corroborate Hester's version of this conversation and need not be set out in detail.

The trial court at the request of the defendants gave the general affirmative written charge in favor of the defendants, and refused a similar charge in favor of the plaintiff.

The trial court's action in giving and refusing the above charges, and the court's action in overruling the objection of defendant to the question "Out of that $147.-66, what was your charge for ginning and hauling?" propounded to the witness Hester were the only errors assigned in appellant's assignment of errors. No motion for a new trial was made.

Section 15 of Title 31 creating what is known as a landlord's lien in this State is as follows: "A landlord has a lien, which is paramount to, and has preference over, all other liens, on the crop grown on rented lands for rent for the current year, and for advances made in money, or other thing of value, either by him directly, or by another at his instance or request for which he became legally bound or liable at or before the time such advances were made, for the sustenance or well-being of the tenant or his family, or for preparing the ground for cultivation, or for cultivating, gathering, saving, handling, or preparing the crop for market; and also on all articles advanced, and on all property purchased with money advanced, or obtained by barter in exchange for articles advanced, for the aggregate price or value of such articles and property."

The lien thus created is purely a creature of statute. The element of possession by the lienee of property of the lienor, essential in the common law and usual statutory concept of a lien, is absent. Vestigial roots of the common-law remedy of distraint are present. See Thompson v. Spinks, 12 Ala. 155. The lien arises out of the relationship of the parties, and unless waived by the landlord is good against all chargeable with notice of the relationship. Notice of the lien is always present where the products of the rented premises remain thereon. Even after their removal the lien of the landlord is good against all the world except those persons who acquire a right thereto without notice of the lien, or without knowledge of facts that should reasonably put them on notice. Orman v. Lane, 130 Ala. 305, 30 So. 441; Metropolitan Life Insurance Co. v. Reconstruction Finance Corporation, 230 Ala. 580, 162 So. 379. The notice contemplated is such knowledge or facts as should direct the attention of the party acquiring the goods to the possible existence of the landlord's lien. Hamilton's Adm'r v. Blackwell, 60 Ala. 545.

While Hester testified that Green had informed him he rented the premises in question from Britnell, Green's testimony was to the effect that he informed Hester that he had sublet the farm from the plaintiff. This issue of fact should have been determined by the jury. Had they accepted Hester's version, and there being no evidence that either Britnell's lease to plaintiff, or plaintiff's sublease to Green had been recorded, no other facts appear that would place Hester in any position other than that of an innocent purchaser. On the other hand, if the jury had accepted Green's version, then in our opinion Hester would have possessed facts sufficient to have charged him with the duty of seeking further facts, and failing to do so he would not be entitled to deny the superiority of the landlord's lien. Therefore, the action of the trial court in giving the general affirmative charge in favor of the defendants was, under the evidence of

this case, invasive of the province of the jury and erroneous.

The propriety of the court's action in permitting plaintiff's witness Hester to state the amount deducted by him for ginning charges depends on whether the landlord's or ginner's lien is superior.

Statutes creating a landlord's lien have been in our codes since 1821. See Clay's Digest, p. 506, Section 3. The present Statute and its precursors have since 1879, see Acts 1879, page 72, provided that such lien is paramount to and has preference over all other liens.

The Statute creating the ginner's lien, Section 69, Title 33, Code of 1940, provides that the ginner's lien "shall have priority over all other liens." This provision dates from the creation of the ginner's lien in 1895. See Acts 1895, page 589.

The priority thus attempted to be given each lien manifestly creates an irreconcilable conflict and as to this phase of each Statute necessity for judicial interpretation is created.

We think the basic rule of statutory interpretation that in case of conflict the last expression of the legislative will is paramount necessitates a holding that as between the landlord's lien and the ginner's lien, that the ginner's lien should prevail, the paramountcy given the ginner's lien, postdating by some sixteen years the legislative expression of a preference to be accorded a landlord's lien.

Equity and fair dealing would also seem to favor such result. Since the landlord must have his cotton ginned in order to market it, he would ultimately lose nothing by paying ginning costs, whereas if the ginner were deprived of his lien by giving supremacy to the landlord's lien a situation is created by which the landlord could be unjustly enriched at the expense of the ginner.

It being our opinion that the ginner's lien is superior to the landlord's lien, it follows that the action of the court in permitting testimony as to ginning costs was correct.

However, this case is reversed because of the court's action in giving the general affirmative charge in favor of the defendants, our reasons for considering such action erroneous having been set out above.

Reversed and remanded.