310 So.2d 182

**N. D. DARDEN et al.**

v.

**Neil OGLE et al.**

**SC 957.**

Supreme Court of Alabama.

March 6, 1975.

Rehearing Denied April 3, 1975.

700

T. J. Carnes, Albertville, for appellants.

None for appellees.

EMBRY, Justice.[1]

This is an appeal from a decree of the Circuit Court of Marshall County. The action was for declaratory judgment. We reverse and remand with instructions. Appellants were plaintiffs below. They are partners doing business under the name of Darden Cotton Company. Appellees were defendants below. They are Martha Decker Johnson and B. T. Smith. They were landlords of the appellee tenants, also defendants below. The tenants are Neil Ogle and Ronnie Kirkland.

The decree from which this appeal is taken, in pertinent part, provides:

"1. That the defendant, Martha D. Johnson, have and recover of the plaintiffs the sum of $1,129.90, the value of one-fourth of the cotton grown on the rented premises, and interest from November 25, 1973, and which judgment is secured by a lien on the cotton referred to above and which is presently in a warehouse controlled by the plaintiffs.

"2. That the defendant, B. T. Smith, have and recover of the plaintiffs $556.-22, representing the value of one-fourth of the cotton grown on his premises for which rent has not been previously paid, and interest from November 15, 1973, and this judgment is secured by a lien on the cotton referred to above and which is presently in a warehouse controlled by the plaintiffs."

During the latter part of 1972 or the early part of 1973, B. V. Ogle entered into an oral agreement with Sherman Decker, agent of Martha Decker Johnson, to rent farmland on thirds and fourths.[2] B. V. Ogle thereafter orally subrented part of the property to Ronnie Kirkland. Subsequently, in March 1973, without notice to, or consent of the landlord, Kirkland entered into a written "output and requirements" contract with Darden Cotton Company. Under the terms of this contract Kirkland agreed to sell and Darden agreed to buy, "all and only," the cotton produced on the Ogle operated farms during the crop year 1973. The agreed purchase price was 30.5¢ per pound. It is not controverted that under normal circumstances this would have been a reasonable price for the cotton in this region when sold in the fall. However, the fall of 1973 was not normal. Because of adverse weather conditions and certain international cotton sales, the price of cotton fiber skyrocketed to its highest level since The War Between the States. Had Kirkland not engaged in forward contracting he would have received more than twice the contract price.

We may now speak of Darden as the buyer, Johnson and Smith as landlords, Kirkland and Ogle as tenants. Smith and Ogle are postured substantially as Johnson and Kirkland.

When the action came to trial before the court without a jury, Darden, the buyer, sought a declaration that, under the contracts, it was entitled to receive all the cotton produced by the tenants from farms operated by them on lands of the landlords. The landlords, by intervention, sought one-fourth of the cotton in kind as rent. They also prayed for general relief.

Following a hearing the trial court made certain findings: 1. The tenants could not

1. This case was originally assigned to another justice of this court, since retired. It has been reassigned to the writer, not a member of this court at time of submission. The case was submitted on briefs which have been carefully read and considered by the writer.

2 An agreement to rent on thirds and fourths means that the landlord's rent is based on one-fourth of all cotton produced and one-third of all corn produced.

bind the landlord to any sale of the landlord's share of the cotton in the absence of the landlord's consent. 2. The clause in the contracts between Darden and defendant tenants which provided "all cotton produced" was to be sold to Darden was unconscionable under Code of Ala., Tit. 7A, § 2–302, but only as to the share of the crops to which the landlords were entitled. 3. The trial court found that landlords were entitled to either the *value* of the cotton or the cotton. The trial court ruled that a proportionate share of the cotton could not be set aside. Since the buyer had prevented enforcement of the landlords' liens, the trial court found the landlords could recover the value of the cotton from the buyer, Darden. Accordingly landlord Johnson was awarded $1,129.90, plus interest from November 25, 1973. Landlord Smith was awarded $556.22, on the same premise, plus interest from November 15, 1973.

The money judgments were declared secured by liens on the cotton which is stored in Darden's warehouse.

The first issue for decision is: what is the effect of the sale of the crops to Darden by the tenants as against the landlords' right to rent? There is no question that the contract between Darden and the tenants was valid and enforceable. Code of Ala., Tit. 7A, §§ 2–401, 2–501(c). See also Mitchell-Huntley Cotton Co. v. Waldrep, 377 F.Supp. 1215 (D.C.1974). Unlike *Mitchell-Huntley,* we have before us the question of the right of a landlord to harvested crops in possession of the purchaser.

The relationship between farm landlords and tenant farmers has long been settled in Alabama. It is expressed in Code of Ala., Tit. 31, § 23:

"§ 23. (8807) (4742, 4743) (2711, 2712) (3064, 3065) (3474, 3475) *Relation Between Party Furnishing Land And Party Furnishing Labor.*

—When one party furnishes the land and the other party furnishes the labor to cultivate it, with stipulations, express or implied, to divide the crop between them in certain proportions, the relation of landlord and tenant, with all its incidents, and to all intents and purposes, shall be held to exist between them; and the portion of the crop to which the party furnishing the land is entitled shall be held and treated as the rent of the land; and this shall be true whether or not by express agreement or by implication the party furnishing the land is to furnish all or a portion of the teams to cultivate it, all or a portion of the feed for the teams, all or a portion of the planting seed, all or a portion of the fertilizer to be used on the crop, or pay for putting in marketable condition his proportion of the crop after the same has been harvested by the tenant."

■ The rent is secured by lien on the crops. That lien is paramount to, and has preference over, all other liens on those crops for the year in which they are grown. Code of Ala., Tit. 31, § 15. This court has said:

"The landlord's lien for rent and advances is made paramount by statute. It is a law-created lien accompanied with restrictions upon the possession and control of the tenant. The tenant may not, without the landlord's consent, remove the crop from the premises, nor otherwise dispose of same, without subjecting his crops to attachment. *He cannot by his mortgage pass any greater right than he has as against the landlord.*" (Emphasis added.) Gay & Bruce v. W. B. Smith & Sons, 211 Ala. 358, 359, 100 So. 633, 634 (1924),

a fortiori, the tenant cannot pass by *forward contract* any greater right than he has against the landlord.

■ This lien, however, does not give the landlord any title to, or possessory rights in, the crop grown by the tenant. Jordan v. Henderson, 258 Ala. 419, 63 So. 2d 379; Stewart v. Young, 212 Ala. 426,

103 So. 44. This is not to say that the landlord has no interest in or control over the crop. It is not a security interest as defined by Code of Ala., Art. 9, Tit. 7A, § 9–104(b). Landlord liens are specifically excluded under that Code section.

We note the cotton, subject matter of this action, is separated and stored at the buyer's warehouse. The warehouse receipts evidencing this are deposited with the clerk of the circuit court. The buyer has done nothing that amounts to a destruction of the landlords' liens, nor has it done anything amounting to an obstruction of the right of enforcement by the landlords of their liens. The cotton is available. The landlords could have asserted their liens by attachment. Code of Ala., Tit. 31, § 20. Moreover, there was sufficient evidence to sustain the finding of the trial court that Darden was chargeable with knowledge of the tenancy. Cf. City National Bank of Decatur v. Nelson, 218 Ala. 90, 117 So. 681.

■ In this case, the landlords intervened seeking to recover the cotton in kind; they also prayed for any other appropriate relief. The court below entered money judgments against the buyer rather than grant the cotton to the landlords in kind. We think that as the issues were framed between the various parties at trial time relief by money judgment was within the power of the trial court to grant.

■ Though attachment is provided as a remedy to enforce a landlord's lien, it is not the exclusive remedy. The lien exists apart from the statutory remedy of attachment. Metropolitan Life Insurance Co. v. Reconstruction Finance Corp., 230 Ala. 580, 162 So. 379; Webb & Aigner v. Darrow, 227 Ala. 441, 150 So. 357. Nothing was inherently wrong in the trial court awarding money judgments where remedy by attachment was not sought. However, in fixing the amount of damages the trial court chose dates, as to the respective landlords, which were declared to be the dates when the cotton was matured, harvested and ready for market (market date). The market price of that kind and grade of cotton on those dates was the measure of damages. There is sufficient evidence in the record from which the trial judge could reasonably conclude that value of such cotton as of *market date* was the measure of rent (one-fourth of market value) due under the oral rental agreements.

However, upon careful review of the record, we cannot find any evidence to support the findings that these dates were proper market dates. Moreover, the parties were not given any opportunity to introduce evidence about, or be heard on, the question of what was the proper measure of damages as to market value of that kind and grade of cotton as of a *proper market date.*

■ While not necessary to this decision, we note that the trial court held the clause in the sale contract between Darden and the tenants providing that Darden would buy and the tenants would sell all the cotton grown on the respective farms, unconscionable and therefore void as affecting the one-fourth share to which the landlord was entitled. The finding was bottomed on Code of Ala., Tit. 7A, § 2–302. The following provisions of law may guide when questions of unconscionability of contracts arise in the future.

Section 2–302 provides:

*"Unconscionable Contract or Clause.—*

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its

commercial setting, purpose and effect to aid the court in making the determination."

In this case the application of § 2–302 to void the output and requirements clause (Buyer agrees to buy and Seller agrees to sell all) is incorrect. Such contracts or clauses therein are specifically approved in § 2–306.

"*Output, Requirements And Exclusive Dealings.*

"(1) A term which measures the quantity by the output of the° seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

"(2) A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale."

The only other requirement for validation of such contracts is that they be entered in good faith as that term is defined in the Commercial Code. Code of Ala., Tit. 7A, § 1–203.

Even were this a case for the application of § 2–302, it is mandatory that a trial court provide the parties an opportunity to present evidence to aid in the determination of unconscionability vel non. Code of Ala., Tit. 7A, § 2–302(2).

This cause is reversed and remanded with instructions that a hearing be held and a determination be made in accordance with this opinion.

Reversed and remanded with instructions.

HEFLIN, C. J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.